UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARYL WAYNE MCNEELY,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-cv-00335-KJM-KJN<br><br>FINDING AND RECOMMENDATIONS |

Plaintiff Daryl Wayne McNeely seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") is based upon legal error and is not supported by substantial evidence in the record. (See ECF No. 20.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 23.)

After carefully considering the record and the parties' briefing, the undersigned recommends that the court deny plaintiff's motion for summary judgment and adopt the

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

Commissioner's cross-motion for summary judgment.

I. BACKGROUND

Plaintiff was born on March 14, 1964, and completed the ninth grade, but did not finish high school.[2] (Administrative Transcript ("AT") 46–47.) On May 22, 2012, plaintiff applied for SSI, alleging that his disability began on March 1, 2012. (AT 16, 230.) Plaintiff claimed that he was disabled due to attention deficit hyperactivity disorder ("ADHD"), bipolar, depression, and high blood pressure. (AT 102.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on August 11, 2014. (AT 39–100.) The ALJ subsequently issued a decision dated November 24, 2014, determining that plaintiff had not been under a disability as defined in the Act from May 22, 2012, the date the application was filed, through the date of the ALJ's decision. (AT 16–32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 31, 2016. (AT 7–9.) Plaintiff requested and received an extension of time to appeal the decision of the Appeals Council. (AT 1–2.) Plaintiff subsequently filed this action on February 15, 2017, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ committed reversible error at step two; (2) whether the ALJ improperly weighed the medical opinion evidence; (3) whether the ALJ improperly discounted plaintiff's credibility; (4) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidence support; and (5) whether the ALJ erred in finding that plaintiff could perform past relevant work.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At step one, the ALJ concluded that plaintiff has not engaged in

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

3

substantial gainful activity since May 22, 2012, the date of his application. (AT 18.) At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disease of the lumbar spine; morbid obesity; depression; organic brain syndrome; and history of polysubstance abuse disorder. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 19.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform medium work as defined in 20 C.F.R. § 416.967(c), except that plaintiff can "occasionally stoop; and he can perform simple, repetitive tasks in a non-public setting with only occasional interaction with coworkers and supervisors." (AT 21.) At step four, the ALJ determined that plaintiff is able to perform past relevant work as a hand packager. (AT 31.) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Social Security Act, since May 22, 2012, the date the application was filed. (AT 32.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ committed reversible error at step two*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of

---

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

In this case, at step two the ALJ found that plaintiff has a severe impairment of "organic brain injury." (AT 18.) The Commissioner concedes that "the record does not appear to support the ALJ's inclusion of organic brain syndrome as a severe impairment." (ECF No. 23 at 14.) Plaintiff asserts that this error requires that the court remand this matter for further consideration. (ECF No. 20 at 18.)

However, the ALJ's error here was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). While failing to list a severe impairment at step two could potentially mean that an ALJ fails to consider an entire category of impairments (i.e. physical or mental), here the ALJ's error was one of over-inclusion. Moreover, because the ALJ found other physical and mental impairments to be severe (AT 18), she proceeded with the disability analysis. Then, at the subsequent steps of the analysis, the ALJ considered all of the functional limitations established by the evidence in the record, and not just the limitations identified as severe. (See AT 19–32.)

Accordingly, the court finds no prejudicial error at step two.

2. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the

record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Preliminarily, the ALJ gave substantial weight to the State agency physical medical consultants when determining plaintiff's physical RFC. These consultants opined that plaintiff "can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk about six hours in an eight-hour workday; he can sit about six hours in an eight-hour workday; and he can occasionally stoop." (AT 26, see AT 110–11, 126–27.) The ALJ determined that these opinions "[we]re reasonable and consistent with the medical evidence as a whole." (AT 26.) While plaintiff does not challenge this determination directly, the court notes that the ALJ's conclusion regarding these opinions is based upon substantial evidence in the record. (See AT 364–410; 438–46; 494–525.)

Plaintiff does, however, argue that the ALJ improperly discredited the opinions of treating psychiatrist Thomas Andrews, M.D. and treating psychiatric physician assistant Benton Kinney,

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

PA-C.  (See ECF No. 20 at 18–22.)

On August 20, 2014, PA-C Kinney provided a medical opinion regarding plaintiff's mental ability to perform work-related activities.  (AT 526–27.)  PA-C Kinney opined that plaintiff was unable to meet competitive standards in his ability to sustain an ordinary routine without special supervision and to maintain regular attendance and be punctual within customary, usually strict tolerances.  (AT 526.)  He also determined that plaintiff was seriously limited but not precluded in many other work-related abilities, as well as limited but satisfactory in a number of other abilities.  (AT 526–27.)  PA-C Kinney also indicated that plaintiff would miss more than four days a month due to his impairments, and that plaintiff was unable to work eight hours a day, five days a week with the legally allowed rest periods and meal breaks.  (AT 527.)

Subsequently, on September 10, 2014, Dr. Andrews provided a similar opinion regarding plaintiff's mental ability to perform work-related activities.  (AT 529–30.)  Dr. Andrews opined that plaintiff was unable to meet competitive standards in his ability to maintain attention for a two hour segment.  (AT 529.)  Dr. Andrews also found plaintiff to be seriously limited but not precluded in many other work-related abilities, as well as limited but satisfactory in a number of other abilities.  (AT 529–30).

The opinions of PA-C Kinney and Dr. Andrews were contradicted by the opinions of consultative psychological examiner Richard Palmer, Ph.D. (AT 429–34) and State agency psychological reviewers Carolyn Goodrich, Ph.D. (AT 108–09, 111–13) and Robert Liss, Ph.D. (AT 124–25, 127–29).  Thus, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of PA-C Kinney and Dr. Andrews.[5]

---

[5]Historically, the Commissioner's regulations and opinions have classified a physician assistant as an "other source."  See Molina, 674 F.3d at 1111; 20 C.F.R. 404.1513(a).

> Information from these "other sources" cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an "acceptable medical source" for this purpose.  However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p (S.S.A. Aug. 9, 2006).  Plaintiff argues that under current regulations and case law, a

The ALJ began her analysis of plaintiff's mental impairments with an extensive discussion of plaintiff's mental health medical records. (See AT 26–28.) After reviewing plaintiff's longitudinal history of mental health treatment, the ALJ noted that plaintiff

> received treatment for multiple mental impairments; however there are limited objective clinical findings to support most of the diagnoses assessed . . . such as attention deficit hyperactivity disorder and a learning disability . . . Nevertheless, I find there is sufficient evidence to support some of the claimant's alleged symptoms and limitations, as they relate to his issues involving depression. . .

(AT 29.) These conclusions are supported by the record. As the ALJ observed, "from November 2012 through August 2013, the claimant's mental status examination findings were generally unremarkable, except for intermittent reports of anxious mood." (AT 24; see AT 449–50, 452–54, 457, 472–73, 477, 481–82, 484.) Additionally, "there is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting" as alleged. (AT 24; see AT 418–24, 460–62.)

After reviewing plaintiff's records, the ALJ considered the opinion of Dr. Palmer, who performed a consultative psychological evaluation of plaintiff on October 21, 2012. (See AT 28–29, 429–33.) As the ALJ summarized, Dr. Palmer determined that plaintiff has the following limitations:

> he is able to adequately perform one or two step simple repetitive tasks and is able to adequately perform complex tasks; he has some social impairments as he reported a history of difficulty in accepting instructions from supervisors and interacting with coworkers and the public; he is able to perform work activities on a consistent basis without special or additional instruction; he has a good ability to maintain regular attendance in the workplace; he has a good ability to complete a normal workday or workweek without interruptions from a psychiatric condition; and he has a mildly to moderately impaired ability to handle normal work related stress from a competitive work environment.

(AT 29; see AT 433–34.)

---

physician assistant is an acceptable source, and as such the ALJ must provide specific and legitimate reasons for discounting PA-C Kinney's opinion. (See ECF No. 20 at 19–22.) The court need not resolve this issue because, as explained, the ALJ discounted PA-C Kinney's opinion for the same specific and legitimate reasons it discounted Dr. Andrews' opinion. (See AT 26–31.)

8

The ALJ also considered the opinions of the State agency mental medical consultants Drs. Goodrich and Liss, who provided opinions on November 29, 2012, and July 9, 2013, respectively. As the ALJ summarized, Drs. Goodrich and Liss opined that plaintiff has the following limitations:

> he has mild restrictions with activities of daily living; he has moderate difficulties in maintaining social functioning; he has moderate difficulties in maintaining concentration, persistence, and pace; and he has no repeated episodes of decompensation. [AT 108, 124.] More specifically . . . [they] opined the claimant's mental limitations included the following: he can perform simple tasks with routine supervision; he can relate to supervisors and peers on a superficial work basis; he can interact, but should have limited public contact[6]; and he can adapt to ordinary workplace stress and change.

(AT 29; see AT 108–29.)

The ALJ gave substantial weight to the opinions of Drs. Palmer, Goodrich, and Liss "because their opinions are reasonable and consistent with the evidence as a whole, including claimant's subjective complaints and the objective findings within his longitudinal mental health treatment history." (AT 29.) This conclusion is supported by substantial evidence in the record. (See AT 418–24, 449–50, 452–54, 457, 460–62, 472–73, 477, 481–82, 484.)

In contrast, the ALJ gave little weight to the contrary opinions of PA-C Kinney and Dr. Andrews

> because they are quite conclusory, providing very little explanation of the evidence relied on in forming the opinion. Notably, I note the claimant was assessed a GAF[7] score of 45, indicating serious symptoms or difficulty functioning, throughout much of the medical record [AT 448–62, 470–92]. However, I find little to no objective clinical findings from the claimant's mental status examinations to support this assessment of the claimant for any extended period of

---

[6] The ALJ's characterization of the record here is not entirely accurate. While Dr. Liss opined that plaintiff "can interact, but should have limited public contact" (AT 129), Dr. Goodrich opined that plaintiff "cannot relate to the general public" (AT 113). However, any error is harmless, as the ALJ's RFC determination indicated that plaintiff is limited to work in a "non-public setting" (AT 21), thereby incorporating the more restrictive limitation. See Molina, 674 F.3d at 1111.

[7] A global assessment of functioning or "GAF" score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30–32.

> time. I therefore give little weight to the opinions of Mr. Kinney and Dr. Andrews because their opinions are not supported by the objective medical evidence.

(AT 30–31.)

These conclusions are supported by the record. First, PA-C Kinney and Dr. Andrews provided their opinions on conclusory check-box forms that do not include any additional information. (See AT 527–30.) While each was a treating provider, neither explained their conclusions, rather they simply checked boxes indicating plaintiff's alleged limitations. (Id.) Moreover, while these opinions were provided only a month apart and are ostensibly based upon the same medical records, each provider indicated that plaintiff had varying abilities and limitations. (Id.) The ALJ notes these differences, by listing out the detailed findings of each provider. (See AT 30.) However, nothing in the record explains the differing opinions of these two providers, who treated plaintiff at the same clinic.

Second, the ALJ reasonably concluded that the objective evidence in the record does not support the extreme limitations opined by PA-C Kinney and Dr. Andrews. As explained, plaintiff largely presented with unremarkable mental status examination findings, except for intermittent reports of anxious mood, and plaintiff was documented as non-compliant with taking his prescribed medication. (See AT 24, 28–29, 418–24, 449–50, 452–54, 457, 460–62, 472–73, 477, 481–82, 484.)

Third, as explained, the ALJ found the contradictory opinions of Drs. Palmer, Goodrich, and Liss to be more consistent with the evidence as a whole. Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting the opinions of PA-C Kinney and Dr. Andrews.

       3.    *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

10

> symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of physical and mental limitations. Indeed, the ALJ limited plaintiff to medium work with occasional stooping and simple repetitive tasks in a non-public setting with only occasional interactions with coworkers and supervisors. (AT 21.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so. The ALJ reasoned as follows:

### i. Statements inconsistent with the record

The ALJ pointed out that plaintiff's testimony directly contradicted evidence in the record. (See AT 23.) Plaintiff testified that he had not used marijuana or any other illegal drug for over ten years, and he denied drinking alcohol. (AT 74.) However, plaintiff tested positive for amphetamines in a May 2012 toxicology screening. (AT 365–67.) Then, plaintiff tested positive for both alcohol and marijuana in a July 2014 screening. (AT 497–98.) The ALJ reasonably concluded that "[t]he fact that the claimant provided inaccurate information on a matter integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable. I therefore find this discrepancy diminishes the persuasiveness of the claimant's subjective complaints and alleged functional limitations." (AT 23.)

### ii. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ concluded that "[t]he claimant's allegations of debilitating and limiting physical and mental symptoms are inconsistent with the objective medical evidence, which can indicate an attempt by the claimant to exaggerate the severity of his symptoms." (AT 23.) Specifically, the ALJ pointed out that plaintiff did not complain of any lumbar spine pain since April 2012 (AT 24), which is supported by substantial evidence in the record. (See AT 364–410, 438, 446, 494–525.) Additionally, the ALJ relied on plaintiff's largely unremarkable mental status examination findings, between November 2012, and August 2013, as well as plaintiff's documented non-compliance with taking his prescribed medication. (See AT 24, 28–29, 418–24, 449–50, 452–54, 457, 460–62, 472–73, 477, 481–82, 484.)

/////

### iii. Failure to seek seek treatment and failure to follow treatment

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Here, the ALJ observed that plaintiff "had not received treatment for degenerative disc disease [of] the lumbar spine since April 2012." (AT 26.) This conclusion is supported by substantial evidence in the record. (AT 364–410, 438, 446, 494–525.)

Moreover, as explained, plaintiff did not take his medication as prescribed. (AT 418–24, 460–62.) Yet, there is no indication from anything in the record that plaintiff's mental health conditions were so acute as to render him unable to seek treatment or comply with a medication regimen. In fact, he continually showed up for medical appointments, and was demonstrably able to take medication that he was prescribed. (See AT 397, 418–24, 460–62, 495, 503.)

### iv. Condition can be controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).

The ALJ observed that plaintiff's "hypertension was being treated and appeared to be generally controlled with medications." (AT 26.) Specifically, the ALJ observed that the "hypertension was being managed medically and should be amendable to proper control by adherence to recommended medical management and medication compliance. The medical records show that claimant's blood pressure level is often within normal limits or only slightly elevated." (AT 19.) This conclusion is supported by the medical records. (See AT 386, 388, 390, 394, 397, 401, 403, 495, 502, 505, 510, 514, 517, 523.)

4. *Whether the ALJ's RFC determination was without substantial evidence support*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken.

5. *Whether the ALJ erred in finding that plaintiff could perform past relevant work*

At step four, the ALJ determines whether a claimant is capable of performing his past relevant work. Lester, 81 F.3d at 828 n.5. If the claimant is capable of performing past relevant work, then he is not disabled. "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1).

Plaintiff testified that in 2006, he was employed for a little over a month in a warehouse, counting and shrink-wrapping boxes. (AT 57–58.) There is no dispute that this job fits within the category of hand packager. Rather, plaintiff argues that this job was not past relevant work. (See ECF No. 20 at 24–25.)

After reviewing the record and taking testimony from a vocational expert ("VE"), the ALJ determined that plaintiff's job as a hand packager "[wa]s past relevant work because the claimant performed it within 15 years of the date of this decision, for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful activity." (AT 31.)

To determine whether an employee's work activity is substantial gainful activity, generally, "[the] primary consideration will be the earnings [he] derive[d] from the work activity." 20 C.F.R. § 416.974(a)(1). Here, plaintiff was paid $2,887.51 in wages from Managed Business Services in 2006, for performing the hand packager job for a little over a month. (AT 57–58, 247.) According to the Commissioner's own guidelines, employment with countable earnings in 2006 of more than $860 per month constituted substantial gainful activity. See Program Operations Manual System (POMS) DI 10501.015, Table 2. Thus, plaintiff's wages as a hand packager in 2006 well exceeded $860.00 a month.

14

Additionally, plaintiff performed the occupation of hand packager long enough to learn the job. The specific vocational preparation ("SVP") for hand packager is SVP 2. 920.587-018 Packager, Hand, DICOT 920.587-018, 1991 WL 687916.

> "SVP" refers to the "specific vocational preparation" level which is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, Appendix C, page 1009 (4th ed. 1991). SVP 2 means "anything beyond a short demonstration up to and including 1 month;"

Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1230 n.4 (9th Cir. 2009); see also 20 C.F.R. § 416.968(a) (a person can usually learn to do an unskilled job in 30 days, and little specific vocational preparation is needed). Because plaintiff performed the job as a hand packager for over a month, he performed it long enough to learn it.

Therefore, the ALJ reasonably concluded that plaintiff's job as a hand packager constituted past relevant work, as it was substantial gainful activity, within the past 15 years, that plaintiff performed long enough to learn.

Moreover, even if the ALJ erred in finding plaintiff was capable of past relevant work, any error would be harmless. See Molina, 674 F.3d at 1111. Here, the VE testified that considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (See AT 95–98.) Therefore, even if the ALJ had continued to step five of the sequential evaluation, she would have still concluded that plaintiff was not under a disability. See Lester, 81 F.3d at 828 n.5; 20 C.F.R § 416.969.[8]

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) be DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 23) be GRANTED.

---

[8] Throughout his briefing, plaintiff also raises several other arguments, which are ultimately unpersuasive.

15

3. The final decision of the Commissioner be AFFIRMED, and judgment be entered for the Commissioner.

4. The Clerk of Court be ordered to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated: August 13, 2018

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

14/ss.17-335.mcneely.f&r